MR. JUSTICE SHEEHY,
dissenting:
I dissent.
The majority opinion will further encumber the already beleaguered judges of the district courts in custody cases, and unnecessarily so in cases where joint custody is proper.
The majority opinion requires findings by district judges of three additional criteria that are not found in the statute. The majority mandate that in joint custody cases the District Court find (1) that the parents have the ability to cooperate in their parental roles, (2) that the child has an established relationship with both parents and sees them as a source of love and security, and (3) that the court consider the geographic proximity of the parent’s residences. Those criteria make it impossible for a father in the circumstance of the respondent here ever to have joint custody of his minor child.
As to the first criterion, the mother does not want joint custody. She demonstrates no ability to cooperate. Her petition requests that she is given sole custody. Her wish to achieve sole custody is contrary to public policy, declared in section 40-4-222, MCA of this *400 state that minor children have “frequent and continuing contact with both parents after the parents have separated . . . and to encourage parents to share the rights and responsibilities of child rearing in order to effect” the State policy. Section 40-4-222, MCA.
The second criterion mandated by the majority, is impossible for this father because the mother has made it nearly impossible for the father to have visitation with the child and the transcript in this cause is a history of the obstructiveness of the mother in preventing the father from getting to know his child. The father has been prevented by the mother from an established relationship with his child. For that reason the District Court found that “the parties have experienced great difficulty in arranging visitation between petitioner [father] and [BTS], most difficulty engendered by respondent [mother] dictating terms of visitation.”
The third criterion, geographic proximity should not be considered a deterrent to joint custody, especially as worked out by the court in this case.
Under the statutes applicable, the District Court has no duty to make the findings for which the majority are now remanding this cause. Section 40-4-224, MCA, provides that when a parent requests joint custody, “the court shall presume joint custody is in the best interests of a minor child unless the court finds, under the factors set forth in 40-4-212, that joint custody is not in the best interests of the minor child.”
Under Section 40-4-224, MCA, the presumption of the law is that joint custody is in the best interests of the minor child. It is only when the District Court finds against joint custody that it must set forth the factors in Section 40-4-212, which militate against joint custody. The majority opinion reverses the provisions of Section 40-4-224 and requires the District Court to make findings explaining the factors in Section 40-4-212, even when it has awarded joint custody. It is for that reason that I asserted above that the majority is encumbering the district courts with duties not mandated by the statute, unnecessary to the exercise of their jurisdiction in joint custody cases and particularly unwieldly in cases such as we have facing us at bar.
The District Court in this case apparently disregarded the testimony of Dr. Jarvis, the clinical psychologist who testified in this case, and with good reason. Without ever interviewing the father, the witness purported to make findings with respect to the interrelationship of the child to the father only on the basis on what the *401 mother had told him. Moreover, the findings of the District Court, based on the record, were that “each recognizes the other as a good parent capable of providing more than adequate care and affection for [BTS].” The testimony of Jarvis has no significance in view of that finding.
Even in its best light, the majority opinion is frustrating the public policy of this state. Separated or divorced parents of minor children are under the declared public policy of this state to be assured of “frequent and continuing contact” with the minor children. Section 40-4-222, MCA. It is our further public policy that “the allotment of time between parties shall be as equal as possible; however, each case shall be determined according to its own practicalities with the best interests of the child as a primary consideration.” Section 40-4-224(2), MCA.
Having those public policy considerations in mind, the District Court determined that in the summertime, when the father was not attending school, he should have custody rights to the child for three months of the year. The father is under our statutes entitled to six months, if the practicalities of the case would work it out. The District Court arranged further for alternate holidays when each parent would enjoy the custody of the child. A more practical way to handle the problem of joint custody here cannot be imagined, yet the majority, in a case where this child is four years old as of December 17, 1985 (the child having been deprived of his father’s company by the mother during most of his life), remand the cause for further findings on vague and elusive considerations derived from an unwarranted distillation of joint custody statutes. I say it is time to give this child a chance to know his father. I would affirm the District Court.